UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Heather C.,                                         File No. 23-cv-484 (ECT/DJF)

      Plaintiff,

v.                                                  **OPINION AND ORDER**

Kilolo Kijakazi, *Acting Commissioner of
Social Security*,

      Defendant.

---

Bryan Konoski, Konoski & Partners, P.C., New York, NY, and James H. Greeman, Greeman Toomey, Minneapolis, MN, for Plaintiff Heather C.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, and James D. Sides, Kevin Murphy, and Marisa Silverman, Social Security Administration, Baltimore, MD, for Defendant Kilolo Kijakazi.

---

After the Social Security Administration denied Plaintiff Heather C.'s[1] application for Disability Insurance benefits, she brought this action challenging the decision. The parties have filed cross-motions for judgment on the administrative record. Because substantial evidence supports the decision to deny Plaintiff's application, Plaintiff's motion is denied and Defendant's is granted.

Plaintiff filed an application for Disability Insurance benefits in March 2021. Admin. R. [ECF No. 6] at 245–51. Plaintiff alleged that she became disabled on September

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

16, 2019, as a result of central sensitization, fibromyalgia, chronic pain and fatigue, restless leg syndrome, and mental fog. *Id.* at 283.

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If she is not, the claimant must then establish that she has a severe medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.*

§ 416.920(a)(4)(iii).  If the claimant's impairment does not meet or is not medically equal to one of the listings, the evaluation proceeds to step four.  The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work.  *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

After the Social Security Administration denied Plaintiff's application for benefits initially and on reconsideration, Admin. R. at 83, 85, she requested a hearing before an Administrative Law Judge.  Plaintiff testified at the hearing and was represented by an attorney.  *Id.* at 33–63.  After the hearing, the ALJ determined that Plaintiff had multiple severe impairments: fibromyalgia, cervical degenerative disc disease, central sensitization disorder, brain fog, bilateral occipital neuralgia, chronic intractable headache, and depression.  *Id.* at 20.  The ALJ found, however, that none of these impairments, either alone or in combination, met or medically equaled any listed impairments.  *Id.* at 21–23.  After a review of Plaintiff's medical history, the ALJ found that Plaintiff had the capacity for light work with some reaching and climbing restrictions, and that Plaintiff was limited to simple, routine, and repetitive tasks not at a fast production rate pace.  *Id.* at 23–26.  The ALJ determined that Plaintiff could not return to her previous employment as a consultant or research and development director, but that there were jobs Plaintiff could perform in

3

the national economy. *Id.* at 26–28. The ALJ thus concluded that Plaintiff was not disabled. *Id.* at 28. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 6–11, and this lawsuit followed. *See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of the Social Security Administration).

Review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. ---, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold . . . is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Plaintiff challenges the ALJ's decision on four grounds, arguing that the ALJ erred by: (1) failing to properly evaluate whether Plaintiff's migraines equaled Listing 11.02B and to include in the RFC limitations related to Plaintiff's headache disorder, (2) not fully developing the record, (3) discounting Plaintiff's subjective complaints in violation of a Social Security Ruling, and (4) failing to incorporate into the RFC certain limitations imposed by agency consultants whose opinions the ALJ found persuasive.

*Listing 11.02B.* The third step of the disability determination requires the ALJ to determine whether Plaintiff's alleged impairments meet or medically equal a listing-level impairment. 20 C.F.R. § 416.920(a)(4)(iii). In this case, the ALJ evaluated Plaintiff's headaches under Listing 11.02, which the Commissioner has determined is "the most closely analogous listed impairment for [a medically determinable impairment] of a primary headache disorder." *Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). Because Listing 11.02 is the listing for epilepsy and thus addresses the frequency and severity of seizures, the ruling requires the ALJ to consider whether Plaintiff's headaches are "equal in severity and duration to the criteria in 11.02B," not whether the claimant meets the criteria specified in those listings. *Id.* The ruling therefore provides that the ALJ will consider

> [a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

The ALJ properly evaluated Plaintiff's headaches under Ruling 19-4p and Listing 11.02. Admin. R. at 22. The decision found that there was no evidence in the record that Plaintiff "suffers migraines or headaches equivalent to" the frequency of seizures outlined

5

in 11.02. *Id.* Plaintiff contends that medical records establish that her headaches rise to a Listing-level impairment, pointing specifically to treatment notes from April 2020 and April 2021. But in April 2020, Plaintiff described her headaches as "dull" and did not complain of any limitations in her daily functioning as a result of the headaches. *Id.* at 412. She denied experiencing pulsation, vision changes, or other physical symptoms in conjunction with her headaches. *Id.* In April 2021, Plaintiff similarly failed to describe limitations she experienced as a result of the headaches, other than telling her provider that she has stopped driving because her headaches make her tired. *Id.* at 859. Plaintiff did not report the frequency of her headaches or any associated phenomenon other than pain. *Id.*

This evidence is not a "detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena," SSR 19-4p, 2019 WL 4169635, at *7. The medical records do not describe the frequency of Plaintiff's headaches or limitations those headaches impose, other than limiting Plaintiff's ability to drive. In the absence of any evidence in the record on these factors, the ALJ properly determined that Plaintiff's headaches did not meet or medically equal the Listing.

Plaintiff also argues that the ALJ erred in failing to account for the frequency of her headaches in the RFC. The only evidence in this regard is Plaintiff's testimony at the hearing that she has severe headaches three times a week. *Id.* at 45–46. The ALJ accounted for Plaintiff's headaches in the RFC by limiting Plaintiff to light work and imposing restrictions on her ability to concentrate and maintain attention. *Id.* at 25. The RFC is supported by substantial evidence.

*Developing the record.* Plaintiff contends that the ALJ failed to develop the record, and as a result, based the RFC on his own lay medical opinion rather than the medical evidence in the record. According to Plaintiff, because the ALJ rejected the opinions of the consultative examiners and also discounted the opinions of Plaintiff's treating providers, no medical opinion evidence existed to support the RFC. Plaintiff argues that the ALJ was therefore required to order an additional consultative examination to provide such an opinion.

But while the RFC must be supported by "some medical evidence of the claimant's ability to function in the workplace," *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007), "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There was sufficient medical evidence in the record regarding Plaintiff's ability to function in the workplace to allow the ALJ to determine Plaintiff's RFC, and the decisions on which Plaintiff relies are thus inapposite. *E.g., Johnson v. Saul*, No. 4:18CV00821 JM-JTR, 2019 WL 4233847, at *2 (E.D. Ark. Sept. 6, 2019) (remanding because "[t]he only medical opinion in this case is the one-word statement by one state-agency doctor that [Plaintiff's physical impairment] was non-severe"). The ALJ noted that the medical evidence showed that Plaintiff's headaches and other pain imposed more restrictions than the consultative examiners believed. Admin. R. at 26 (citing, *inter alia*, *id.* at 364–65, 949). Further, Plaintiff's reported activities, such as exercising, dancing, and Nordic skiing supported the conclusion she had the physical capabilities to perform light work. *Id.* at 25, 377, 663, 718. The RFC

7

is supported by "some medical evidence," *Cox*, 495 F.3d at 619, and the ALJ did not fail to develop the record to support the RFC.

*Subjective complaints.* Plaintiff next contends that the ALJ erred in discounting her subjective complaints of pain and other physical symptoms. Specifically, Plaintiff argues that it was legal error for the ALJ to rely solely on a lack of objective medical evidence supporting Plaintiff's subjective complaints, because headaches and fibromyalgia are not objectively verifiable conditions.

As addressed above, however, the ALJ did not rely only on the objective medical evidence for his determination that Plaintiff's subjective complaints were not wholly credible. Rather, the ALJ properly noted Plaintiff's physical activities, including exercise, dancing, and Nordic skiing, and her ability to function in her daily life, in assessing Plaintiff's limitations. The ALJ did not ignore Plaintiff's testimony, as she contends. Instead, as he was required to do, the ALJ evaluated Plaintiff's testimony in light of all of the other evidence in the record. Substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints were not fully credible.

*RFC limitations*. Finally, Plaintiff contends that the ALJ erred in not including in the RFC functional restrictions contained in opinions he found persuasive. The state agency consultants both opined that Plaintiff could have "brief and superficial interactions" with others, Admin. R. at 79, 93, but the ALJ did not include any interaction restrictions in the RFC.

The RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description

8

of his limitations." *McKinney*, 228 F.3d at 863.  In formulating the RFC, however, the ALJ "is not required to adopt all limitations proposed by [expert reviewers]—even if the ALJ has accorded that [expert's] opinion substantial weight."  *Mark S. v. Saul*, No. 18-cv-02936-HB, 2020 WL 1043795, at *6 (D. Minn. Mar. 4, 2020).  As the ALJ noted, Plaintiff reported getting along well with authority figures and spending time every day with her partner and her family.  Admin. R. at 22.  The ALJ concluded that Plaintiff had only a mild limitation in interacting with others.  *Id.*  The RFC is fully consistent with this conclusion, and is supported by substantial evidence.

## ORDER

Substantial evidence in the record supports the ALJ's determination that Plaintiff is not disabled.  Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff's Motion for Judgment [ECF No. 11] is **DENIED**.

2. Defendant's Motion for Judgment [ECF No. 17] is **GRANTED**.

3. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 30, 2023            s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court